IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

MICHAEL R. JONES,

    Plaintiff,

V.        CIVIL ACTION NO. 3:04-0786

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on April 3, 2001, alleging disability commencing December 27, 1996,[1] as a consequence of a herniated disc, numbness in legs, hypertension, heart disease and nerves. On appeal from initial and reconsidered denials, an administrative law judge dismissed plaintiff's request for hearing as untimely filed. The Appeals Council, by order dated May 7, 2003, remanded the case to the administrative law judge for a hearing and decision. While

---

[1] Plaintiff's insured status expired December 31, 2001, and, for purposes of his application for disability insurance benefits, it was incumbent upon him to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

the case was on appeal, plaintiff filed a new application on February 26, 2003, the review of which has been consolidated with the earlier applications. After the hearing, the administrative law judge found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was thirty-three years of age and had obtained a high school education. His past relevant employment experience consisted of work as a plasterer/drywaller and welder. In his decision, the administrative law judge determined that plaintiff suffers from "degenerative disc disease with history of disc herniation, hypertension and atypical chest pain, probable COPD and obesity," impairments he found severe. Though concluding that plaintiff was unable to perform his past work,[2] the administrative law judge found that, on and prior to December 31, 2001, he had the residual functional capacity for a limited range of medium level work. Subsequent to this date, due to deterioration of plaintiff's condition, the administrative law judge found that he had the residual functional capacity for a limited range of sedentary level work. On the basis of these findings, and relying on Rule 201.28 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that the Commissioner's decision is supported by substantial evidence. Plaintiff suffered a work-related back injury in 1996 which was treated initially by a chiropractor. An MRI, performed on January 27, 1997, reportedly showed

---

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

evidence of degenerative disc disease with annular bulging and disc protrusion at L5-S1. Plaintiff was referred to Dr. M. Jerry Day, a neurosurgeon, who first evaluated him on January 30, 1997, and observed "very significant" muscle spasm in the lumbar spine with diminished range of motion. He diagnosed lumbar strain and pain due to disc desiccation and recommended continued chiropractic care along with medication. EMG and nerve conduction studies of the lower extremities performed on October 30, 1997, were interpreted as normal. Plaintiff was placed in a physical therapy program but did not improve so Dr. Day recommended pain management. He also concluded that the evidence did not suggest nerve root compression and, therefore, plaintiff was not a surgical candidate.

Reports indicate plaintiff received epidural steroid injections through the St. Mary's Hospital Pain Management Center in October and December of 1998 and January of 1999. He subsequently reported that these were of little help. He participated in a functional capacity evaluation on January 21, 1999, but stopped it due to allegations of increased pain. It was observed his movement pattern did not correlate with the severe pain he reported, and the examiner concluded that "true symptom/disability exaggeration exists." The following month, a second functional capacity evaluation was successfully completed, with plaintiff's demonstrated abilities placing him in the medium exertional range. Again, it was noted he exhibited symptom/disability exaggeration.

From January 21, 1999, through March 16, 1999, plaintiff participated in a work hardening program but had to stop after completing only twelve of eighteen sessions due to increased blood pressure. He was sent to a local clinic and told to resume work hardening after his

3

blood pressure was brought under control; however, he did not return and was discharged on April 8, 1999.

Reports from Dr. Felix Muniz at the pain management center reflect continued treatment which consisted mainly of pain medication since plaintiff reported the injections he received were of no benefit. In January of 2000, plaintiff related he had been authorized to go to a rehabilitation program at Ohio State University which was to last six weeks. It is not clear from the record whether he ever participated in the program or not. An MRI performed February 14, 2000, was interpreted as showing a herniated disc at the L5-S1 level which, although close, did not clearly impinge on the left L1 nerve root. A bulging disc was noted at L4-5.

Plaintiff reported to Dr. Muniz on May 18, 2000, that he reinjured his back in work hardening. He walked slowly, using a cane, was unable to stand on his toes and had an absent left ankle reflex and positive straight leg raising. When examined by Dr. Robert E. Frank on July 22, 2000, just two months later, however, plaintiff had no tenderness in the spine, negative straight leg raising, ability to walk adequately on the heels and toes and significantly better range of motion.[4] Dr. Frank, noting that exam showed only "subjective discomfort with limited range of motion, but no objective findings," concluded that plaintiff had definitely reached his maximum medical improvement. He felt plaintiff could not perform his past work but could do "many other types of physical activity."

Another MRI performed May 19, 2001, showed no evidence of disc herniation, just "mild" degenerative change and bulging annuli at L4-5 and L5-S1 without significant spinal

---

[4] Plaintiff also had thickly calloused hands which he attributed to housework, but this physician suspected it was due to strenuous activity performed with his hands.

stenosis. On June 7, 2001, Dr. Jules Barefoot evaluated plaintiff for the Commissioner. In terms of abnormal findings, only spinal tenderness and "mild" restricted range of motion were observed. He opined that plaintiff was unable to lift and carry heavy loads or to repetitively bend or squat. The reports of Dr. Randall McCollister, who provided conservative treatment in the form of medication to plaintiff from February of 2001 through July 31, 2002, are nearly illegible but do not appear to contain any findings that are inconsistent with those reported by Drs. Frank, Barefoot, Muniz and Day. In August of 2001, however, Dr. McCollister reported that plaintiff could not work. While he also treated plaintiff for anxiety, there is no indication he referred him for counseling or psychiatric treatment, and there are no other reports of difficulty in this regard in the record. Based on this evidence, the administrative law judge concluded there was no medically determinable mental impairment, and this finding is supported by substantial evidence. This is the extent of the evidence prior to December 31, 2001, plaintiff's date last insured.

On July 31, 2002, plaintiff sought treatment at a local emergency room, complaining of back pain and numbness to both legs after lifting furniture the day before. It was noted he was no longer seeing Dr. McCollister because this physician had been arrested. Exam revealed only spinal tenderness without neurological abnormalities. An X-ray was interpreted as showing degenerative disc disease but "nothing acute." There is no indication of further treatment or exam until Dr. W. Roy Stauffer performed a consultative evaluation on May 21, 2003. In addition to back pain, plaintiff reported a history of hypertension and chest pain, for which he was not being treated, and shortness of breath on exertion. On exam, plaintiff was "moderately to grossly" obese; moved slowly and was obviously in pain when getting on and off the exam table; had tenderness along the lumbar spine with positive straight leg raising; and displayed limited range of motion in the

shoulder, hips, cervical spine and lumbar spine. Neurologically, plaintiff's gait was mildly antalgic, but upper and lower extremity strength was full, and ability to heel, toe and tandem walk was considered "fair," although he had difficulty balancing. Pulmonary function testing was interpreted as showing mild expiratory obstruction, although Dr. Stauffer characterized this as moderate and diagnosed probable chronic obstructive pulmonary disease as well as a history of low back pain, hypertension, atypical chest pain and obesity.

This physician evaluated plaintiff's residual functional capacity and concluded he could occasionally lift ten pounds; frequently lift less than ten pounds; stand and walk at least two hours per day; sit six hours per day; would have difficulty pushing and pulling with the upper and lower extremities as well as climbing ladders, ropes and scaffolds, repetitive stooping, kneeling, crouching and crawling; and, with repetitive reaching overhead. He also concluded plaintiff should avoid moderate exposure to fumes, dust and gases. The following month, a state agency medical advisor assessed plaintiff as capable of a limited range of light level work.

According to evidence submitted to the Appeals Council, a May 15, 2003 MRI was interpreted as showing disc desiccation at L4-5 and L5-S1 with bulging at the L4-5 level and degenerative facet hypertrophy causing moderate left side neural foraminal stenosis but no definite impingement on the L4 nerve root. Some degenerative facet hypertrophy was observed at L5-S1, but neural foraminal stenosis at this level was considered "stable."

Dr. Caraway, at the pain relief center, referred plaintiff to Dr. Panos Ignatiadis, a neurosurgeon, who noted that, in view of the failure of previous treatment, the only alternative was for plaintiff to have a fusion of L4-5 and L5-S1. This surgery, consisting of a total laminectomy and diskectomy at L5-S1 with insertion of screws, rods and "ceramic cages," was performed on

November 13, 2003, and this information was in the record reviewed by the administrative law judge. What he did not have available were follow-up reports from Dr. Ignatiadis, reflecting that five weeks post-op plaintiff was using a cane and displayed mild weakness of the dorsiflexors of the left foot. About five weeks later, on February 2, 2004, plaintiff was noted to be having physical therapy and displayed decreased motility but "satisfactory" strength and reflexes. A February 23, 2004 physical therapy note reflects plaintiff reporting stiffness and soreness due to jarring from going four-wheeling in his truck the day before. The physical therapy reports continue through April 26, 2004. Dr. Ignadiatis related on April 12, 2004, that plaintiff was definitely better than before surgery. Although he still had some pain in his legs, this was less than he had previously. He recommended continuing with physical therapy for three more weeks then work conditioning/hardening and then a functional capacity evaluation.

In assessing residual functional capacity, the administrative law judge made findings for the period prior to plaintiff's date last insured and after, finding he would have been more significantly limited after December 31, 2001, due to increased pain which ultimately led to surgery. From plaintiff's alleged onset date until his insured status expired, the administrative law judge concluded that plaintiff could perform medium level work with no repetitive bending or squatting. He noted the results of the functional capacity evaluation in February of 1999, as well as plaintiff's conservative treatment and the relatively normal exams by Drs. Frank and Barefoot in July 2000 and June 2001, respectively, in making this finding. Taking account of the evidence reflecting a worsening of plaintiff's condition in 2002 and 2003, as well as the subsequent surgery, the administrative law judge felt Dr. Stauffer's findings as to plaintiff's capacity for work at the sedentary level were consistent with the evidence and adopted them.

In making these findings, the administrative law judge obviously did not accept Dr. McCollister's opinion to the contrary, noting that issues pertaining to the ability to work were within the Commissioner's domain and that Dr. McCollister provided no clear reasoning or objective support for his opinion. After considering the evidence, the Court concludes that there is substantial support for the administrative law judge's findings. While plaintiff argues that the administrative law judge's choice of his date last insured as the point at which his residual functional capacity changed is not supported by the evidence, the Court does not find this argument persuasive. The evidence, including a functional capacity evaluation and exams, support the less limited findings from plaintiff's alleged onset date forward until actually somewhat past his date last insured when the reports reflect worsening of pain and the necessity for surgery. There is no evidence of total disability, other than possibly the few months covering the pre- and post-surgery period. Even though the administrative law judge did not have the treating physician's post-operative notes when he made his findings, they do, as noted, fully support those findings.

While plaintiff alleged significant limitations on his activities due to pain, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded he was less than fully credible. Persuasive to him were reports of symptom exaggeration during some evaluations as well as functional capacity evaluation findings, objective findings and conservative treatment. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of his functional capacity and overall

8

medical condition, a vocational expert testified that there were significant numbers of medium, light and sedentary jobs in the national economy which plaintiff could have performed prior to December 31, 2001, and a significant number of sedentary jobs which could have been performed subsequent to that date.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner must be affirmed.

In accordance with the foregoing, it is .**ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed. All matters in this case being concluded, it is ordered dismissed and retired from the Court's docket.

The Clerk is directed to mail a certified copy of this Memorandum Order to all counsel of record.

ENTER: September 20, 2005

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE